# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

SUSAN WINSTEAD AND
DEBORAH LANGFORD,

       *Plaintiffs*,

v.                            CASE NO. 1:16CV00054-MW-GRJ

LAFAYETTE COUNTY BOARD
OF COUNTY COMMISSIONERS,

       *Defendant*.
_____/

## ORDER DENYING MOTION TO DISMISS

This is an employment discrimination case. Plantiffs Susan Winstead and Deborah Langford sue the Lafayette County Board of County Commissioners ("Board") for gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act. ECF No. 13. Langford also brings suit under a theory of sexual orientation or perceived sexual orientation discrimination. Plaintiffs allege that their co-worker, Leta Hawkins, and Hawkins's associate, Travis Sullivan, engaged in two related sets of actions directed at Plaintiffs. Hawkins allegedly contacted residents who had been served by Plaintiffs and encouraged

those residents to register unfounded complaints against Plaintiffs. Sullivan allegedly took to harassing Plaintiffs on Hawkins's behalf in Facebook posts, other internet posts, and on both radio and television.

Plaintiffs allege that the Board failed to adequately protect or defend them from this harassment, and that in fact at least one County Commissioner, Earnest Jones, began to periodically harass Plaintiffs himself. This eventually led Langford to suffer a breakdown, which then led to her departure from the employ of the Board—which she terms a constructive termination.

The Board has filed a motion to dismiss Counts I and II of the First Amended Complaint. ECF No. 15. The Board argues that, as to Count I—gender discrimination—Plaintiffs fail to state a claim. The Board argues that Count II—which relies on a theory of perceived sexual orientation discrimination—fails as a matter of law. The Board does not move for dismissal of Count III.

## I

This Court accepts the facts in the light most favorable to the plaintiffs. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008). All reasonable doubts about the facts must be resolved in favor of the plaintiffs. *Id.*

At all pertinent times, Plaintiffs Winstead and Langford were employed by Defendant's EMS department. ECF No. 13 ¶¶ 7–8. Winstead has worked at the EMS department continually, either full- or part-time, since June of 1994. *Id.* ¶ 7. Langford began working at the EMS department in 2001, and prior to such date had worked for EMS departments in other counties. *Id.* At the time of the events giving rise to this case, the two had worked together for a long time. *Id.* ¶ 8. Prior to mid-2012, neither Winstead nor Langford had received any complaints pertaining to their work for Defendant. *Id.*

In or around the middle of the year 2012, Leta Hawkins, a part-time EMT at Defendant's EMS department, began contacting residents who had been serviced by Plaintiffs and encouraged them to register complaints against Plaintiffs. *Id.* ¶ 10. Hawkins allegedly resented Plaintiffs because Hawkins had applied for (and presumably been denied) the positions Plaintiffs held. *Id.* At around this same time, Travis Sullivan, an associate of Hawkins, allegedly began berating Plaintiffs on Hawkins's behalf in Facebook posts, other internet posts, and on both radio and television. *Id.*

Travis Hicks, then the Director of the EMS department, suggested to the Board that public statements of support for Plaintiffs should be issued pending investigation of the complaints. *Id.* The Board elected not to protect or defend Plaintiffs, apparently largely at the behest of Commissioner Earnest Jones. *Id.* Plaintiffs allege that they could not lawfully defend themselves from complaints because doing so would necessarily violate privacy protections under the Health Insurance Portability and Accountability Act. *Id.* ¶ 15.

On or about June 27, 2012, Plaintiffs provided emergency medical care to a citizen suffering from a serious health condition. *Id.* ¶ 11. Initially, the citizen and his family demonstrated appreciation for Plaintiffs' efforts. *Id.* However, approximately six weeks later, the citizen's family began registering unfounded complaints against Plaintiffs, including a complaint for rough handling during transport. *Id.* Plaintiffs allege that the change in the citizen's family's opinion of Plaintiffs' medical care was due to the meddling and intervention of Hawkins. *Id.*

In response to the complaints, Commissioner Jones suggested that Plaintiffs be split up, allegedly based on his opinion

that two females should not work together. *Id*. ¶ 12. Plaintiffs allege that Jones and others then harassed Plaintiffs because of their gender and Langford's perceived sexual orientation. *Id*. ¶ 13–14. In particular, Plaintiffs allege that Jones made visits to Plaintiffs' workplace with the intention of finding Plaintiffs asleep and harassing them. *Id*. On one occasion, Commissioner Jones allegedly visited Plaintiffs' workplace during a scheduled shift and threatened to fire Plaintiffs for sleeping during the shift. *Id*. ¶ 13. Plaintiffs note that, because their shifts were 48 consecutive hours long, there was no policy against sleeping during the time between calls, so long as the required response times were met. *Id*.

According to Plaintiffs, the Board continued to allow and even encourage the harassment. *Id*. ¶ 15–17. In August of 2014, Langford suffered a breakdown and left her position. *Id*. ¶ 18. Plaintiffs claim that this constituted a constructive termination. *Id*.

In sum, Plaintiffs allege that (1) Defendant discriminated against Plaintiffs by harassing them and allowing the harassment and unfounded complaints to continue, despite knowing that Plaintiffs could not defend themselves; (2) Defendant discriminated against Plaintiff Langford because of her sexual orientation

or perceived sexual orientation; and (3) Defendant perpetuated a hostile work environment by harassing and/or allowing Plaintiffs to be harassed based on their gender. *Id*.

## II

### A

The Board moves for Count I to be dismissed because Plaintiffs have failed to state a plausible claim for relief for gender discrimination. The Board argues that Count I of Plaintiffs' complaint is full of bare-bones allegations of discrimination and legal conclusions, not "factual allegations . . . such as the names of the similarly situated male employees who were treated differently or the manner in which any such male employees were treated differently." ECF No. 15, at 9.

### 1

Federal Rule of Civil Procedure 8(a) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When deciding a motion to dismiss, courts must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 799 (11th Cir. 2014) (quoting *Spain v. Brown & Williamson Tobacco Corp.*, 363

F.3d 1183, 1187 (11th Cir. 2004)). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 555 (2007). A complaint must also contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim is facially plausible when the court can draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *McCone*, 582 F. App'x at 799–800 (emphasis added) (quoting *Iqbal*, 556 U.S. at 662) (internal quotation marks omitted).

The requirement that a complaint contain "sufficient factual matter" applies universally to all claims. *See id.* (applying *Iqbal* and *Twombly* to a discrimination claim). However, in the employment discrimination context, neither *Iqbal* nor *Twombly*, nor the Federal Rules of Civil Procedure, require a complaint to allege facts establishing each element of a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding that a complaint need not contain "specific facts

establishing a prima facie case of discrimination under the frame-work set forth by . . . *McDonnell Douglas*"); *see also McCone*, 582 F. App'x at 801 n.4 (acknowledging that "*Twombly* effectively over-ruled *Swierkiewicz* when it rejected the old standard for dismissal" but that "this had no impact on *Swierkiewicz*'s statement that a plaintiff is not required to plead a prima facie case of discrimina-tion in order to survive dismissal"). Rather, as the Eleventh Circuit has recently reiterated, the purpose of Rule 8(a)(2)'s pleading re-quirements is to ensure that defendants receive fair notice of what the claim is and on what grounds it is made. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015).

## 2

Admittedly, Plaintiffs' complaint is close to the line. There is little to indicate that the Board's actions were motivated by Plain-tiffs' status as members of a protected class, other than Commis-sioner Jones's "expressed view that two females should not work together." Moreover, even assuming that the Board acted out of unlawful prejudice towards Plaintiffs' protected class, there is a dearth of detail as to what, precisely, the alleged discriminatory acts were. It appears that there were two such acts or sets of acts:

(1) the Board's repeated refusal to defend or protect Plaintiffs from false accusations; and (2) Langford's constructive termination. As for this first set of acts, it's not clear whether an employer's refusal to protect its employees from unfair criticism could be deemed "a serious and material change in the terms, conditions, or privileges of employment." *See, e.g.*, *Hyde v. K.B. Home, Inc.*, 355 F. App'x 266, 269 (11th Cir. 2009) (quotations and citations omitted). And the constructive termination, although certainly a "serious and material change in the terms of employment," is best read in the context of the complaint as the end-point of an intolerably hostile workplace—that is, it seems much easier to fit into the hostile work environment theory of Count III.

However, even after *Twombly* and *Iqbal*, Rule 8(a) is a permissive rule. Plaintiffs have not alleged every element of a prima facie case under *McDonnell Douglas*, but under *Swierkiewicz* they need not do so. All Plaintiffs need to do is allege enough factual information to give fair notice to the Board as to what Plaintiffs' claim is, and what events the claim pertains to. This Court is confident that Plaintiffs have passed that bar. The Board has received fair notice that Count I concerns employment discrimination grounded in events surrounding Leta Hawkins, Travis Sullivan,

and Earnest Jones between mid-2014 and August 2014. The discriminatory actions, though not spelled out in detail, are related to (1) the Board's refusal to protect or defend Plaintiffs from unfounded complaints and (2) the Board's ratification and condoning of Commissioner Jones's harassment of Plaintiffs. This information is sufficient to allow the Board to adequately prepare to defend the claim.

**3**

As an alternative basis for denying the Board's motion to dismiss Count I, this Court holds that Count I does not even plead a separate claim for relief, but merely a theory or an "alternative statement of a claim." *See* Fed. R. Civ. P. 8(d)(2). And because (1) the Board has not challenged Plaintiffs' other theory of gender discrimination in Count III and (2) dismissal of a theory—as opposed to a claim—is inappropriate at the motion to dismiss stage, this Court will not dismiss Count I.

"[A] complaint may contain alternative theories, and if one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint." *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 218 (D.C. Cir. 1999). Whether two counts of a complaint comprise separate theories underlying the same claim

or truly separate "claims for relief" is not always clear. *See Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 780 (11th Cir. 2007). But here, it seems obvious that Count I and Count III—which involve nearly identical facts—are just two different *theories* of relief.

Count I presents one type of discrimination theory, the gist of which is that the Board took various adverse employment actions against Plaintiffs on account of their gender. This is sometimes called (at least in this Circuit) a "tangible employment action" theory.[1] *See, e.g.*, *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 975 (11th Cir. 2014). The theory is called by this name because an action taken by an employer must constitute "a serious and material change in the terms, conditions, or privileges of employment" in order to count for purposes of this theory. *See, e.g.*, *Hyde*, 355 F. App'x at 269 (quotations and citations omitted).

---

[1] It is also, somewhat confusingly, sometimes called a "disparate treatment" theory. *See, e.g.*, *Hyde*, 355 F. App'x at 268–69. But "disparate treatment" has been at other times used to refer to the entire universe of discrimination theories under Title VII, *including* hostile work environment theories. *See Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 975 (11th Cir. 2014). More proof that "legal language is a plague"—one that appears to be mutating in this instance. *Blackmon v. Williams*, – F.3d –, 2016 WL 3007212, at *18 (7th Cir. May 24, 2016) (Posner, J., concurring in part and dissenting in part).

Count III presents a different theory of discrimination, usually referred to as a "hostile work environment" theory. *See id.* at 271–72. This theory doesn't require that an employer have taken a single, discrete action amounting to "a serious and material change in the terms, conditions, or privileges of employment." Rather, a hostile work environment theory "is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 271 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

It's common practice for a plaintiff in an employment discrimination case to refer to both of these theories in the complaint, and there's good reason for this—early on, before discovery has been conducted, it might not be clear which theory is more viable. But of course a plaintiff need not refer to *either* theory in a complaint, because while "[a] complaint must narrate a plausible grievance[,] it need not set out a legal theory or cite authority." *Frank v. Walker*, 819 F.3d 384, 387 (7th Cir. 2016) (Easterbrook, J.). And even when a plaintiff *does* set out a legal theory, dismissal is not proper if some other theory would, under the facts alleged in

the complaint, entitle the plaintiff to relief. *See, e.g.*, *Dotschay v. Nat'l Mut. Ins. Co.*, 246 F.2d 221, 223 (5th Cir. 1957) ("[A] complaint is not to be dismissed because the plaintiff's lawyer has misconceived the proper legal theory of the claim, but is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, regardless of whether it asks for the proper relief.").[2]

What this all means is that when two theories based on the same facts—and part of a single claim for relief—are presented in a complaint, and a defendant only challenges the sufficiency of the complaint as to one of the theories, the claim cannot be dismissed. And the challenged *theory* can't be dismissed, either, because dismissal of theories (as opposed to claims) is inappropriate at the motion to dismiss stage. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.") (emphasis in original); *see also Campbell v. Dist. of Columbia*, 972 F. Supp. 2d 38, 46 n.5 (D.D.C. 2013) ("[B]ecause Ms. Campbell's claim survives the

---

[2] Decisions of the Fifth Circuit handed down prior to October 1, 1981 are binding within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

motion to dismiss stage on at least a 'stigma or disability' theory, the Court need not address at this stage whether the complaint alleges that Defendants made a defamatory statement to support a 'reputation-plus' theory as well. The Court notes that the allegations in the complaint . . . may support such a theory, and Ms. Campbell may have too hastily focused on a 'stigma or disability' theory. Regardless, she may take discovery under both theories.").

This may seem somewhat surprising—after all, hostile work environment theories are routinely disposed of at summary judgment even when tangible employment action theories based on the same facts are allowed to go to a jury. But that's because "[s]ummary judgment is different. The Federal Rules of Civil Procedure explicitly allow for '[p]artial [s]ummary [j]udgment' and require parties to 'identif[y] each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought.'" *City of Angola*, 809 F.3d at 325 (quoting Fed. R. Civ. P. 56(a)) (emphasis in original). This makes sense—by the time summary judgment motions are submitted, discovery is complete and it is (or should be) apparent to the parties which legal theories are viable, so a court should be allowed to narrow the available theories for trial. But at this early stage, a defendant shouldn't be able to force a

plaintiff to "pick a theory" before all the facts are in by moving for partial dismissal of a claim.

Because the Board has moved to dismiss part of a claim, rather than an entire "claim for relief," this Court will not dismiss Count I. It may turn out that discovery reveals that the facts of this case fit a hostile work environment theory better than a tangible employment action theory, in which case the Board will be likely to succeed on a motion for partial summary judgment. But at this stage, Plaintiffs are entitled to proceed on both theories.

## B

The Board argues that Count II should be dismissed with prejudice because actual—and by extension perceived—sexual orientation is not a protected classification under Title VII and because discrimination on the basis of sexual orientation is not discrimination on the basis of sex. The Board cites a litany of case law in support of its position, most notably *Fredette v. BVP Management Associates*, 112 F.3d 1503, 1510 (11th Cir. 1997), which would of course be controlling precedent for this Court. This Court is ultimately unconvinced by the Board's argument that *Fredette* controls this case.

**1**

Had the Eleventh Circuit actually ruled on the issue of sexual orientation discrimination in *Fredette*—as the Board suggests it did—its decision would be binding. However, that is not the case. *Fredette* merely held that "when a homosexual male supervisor solicits sexual favors from a male subordinate . . . the male subordinate can state a viable Title VII claim for *gender* discrimination." 112 F.3d at 1510. The *Fredette* court emphasized the "narrowness" of its holding so as to have no implications for "the law regarding discrimination based on sexual orientation." *Id.* It thus did *not* hold that sexual orientation discrimination claims were not actionable as sex discrimination. Though other courts have interpreted *Fredette* differently, this Court's interpretation—that *Fredette* left the issue open—is hardly unique. *Compare Mowery v. Escambia Cty. Utils. Auth.*, No. 3:04cv382, 2006 WL 327965, at *8 (N.D. Fla. Feb. 10, 2006) (characterizing *Fredette* as *not* "holding that discrimination because of sexual orientation is *not* actionable"); *Rodriguez v. Alpha Inst. of S. Fla., Inc.*, No. 10–80714–CIV, 2011 WL 5103950, at *5 (S.D. Fla. Oct. 27, 2011) (same), *with Stevens v. Ala. Dep't of Corr.*, No. 1:12cv3782, 2015 WL 1245355, at *7 (N.D. Ala. Mar. 18,

2015) (suggesting that *Fredette* foreclosed claims of sexual orientation discrimination under Title VII); *Fitzpatrick v. Winn-Dixie Montgomery, Inc.*, 153 F. Supp. 2d 1303, 1306 (M.D. Ala. 2001) ("Sexual orientation is not a protected class under Title VII.").[3] Moreover, because none of the Board's remaining cited case law comes from the Eleventh Circuit, the opinions contained therein are merely persuasive and not binding on this Court.

Without controlling authority from the Eleventh Circuit, the question of whether sexual orientation discrimination claims are cognizable under Title VII is "an open one." *Isaacs v. Felder Servs., LLC*, – F. Supp. 3d –, 2015 WL 6560655, at *3 (M.D. Ala. Oct. 29, 2015).[4] And, as evidenced by the cases cited by the parties, courts have answered this "open" question in different ways.

---

[3] Of course the *Fitzpatrick* court was entirely correct in stating that "sexual orientation is not a protected class under Title VII." But "sex" is, and, as explained in this Order, discrimination on the basis of sexual orientation is discrimination because of sex.

[4] Neither party mentions *Smith v. Liberty Mutual Insurance Co.*, 569 F.2d 325 (5th Cir. 1978), which is, of course, binding authority on this Court. *See Bonner*, 661 F.2d at 1207. In *Smith*, "the claim [wa]s not that [the plaintiff] was discriminated against because he was a male, but because as a male, he was thought to have those attributes more generally characteristic of females and epitomized in the descriptive 'effeminate.'" *Smith*, 569 F.2d at 327. The court held that such discrimination was not sex discrimination within the meaning of Title VII, *id.*, and noted in a footnote that "[t]he EEOC itself has ruled that adverse action against homosexuals is not cognizable under Title VII," *id.* n.1.

**2**

Title VII prohibits discrimination against an employee "because of such individual's . . . sex." 42 U.S.C. §2000e–2(a). The Board accurately articulates the fact that courts have in the past held that the term "sex" does not include "sexual orientation." However, Plaintiffs are correct that the law is currently in a state of flux. *See, e.g.*, *Hinton v. Va. Union Univ.*, – F. Supp. 3d –, 2016 WL 2621967, at *5 (E.D. Va. May 5, 2016) (acknowledging the "evolving state of the law and split district court decisions respecting whether sexual orientation discrimination claims are cognizable under Title VII"); *Roberts v. United Parcel Serv., Inc.*, 115 F. Supp. 3d 344, 348 (E.D.N.Y. 2015) (recognizing that the law regarding workplace behavior is evolving alongside the nation's understanding of sexual orientation). In particular, several courts have recently found claims of sexual orientation discrimination cognizable under Title VII. *See, e.g.*, *Videckis v. Pepperdine Univ.*,

---

*Smith* is no longer good law on this point. Its holding vis-à-vis discrimination on the basis of sex stereotyping has clearly been abrogated by subsequent Supreme Court cases. *See infra*. And of course the EEOC has changed course. *See infra*. In short, every pillar supporting the reasoning of the *Smith* court has been knocked down. *Smith* is one of many examples of a parsimonious reading of Title VII failing to stand the test of time. *See, e.g.*, *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125 (1976) (holding that disability-benefits plan that failed to cover pregnancy-related disabilities did not violate Title VII), *superseded by statute*, Pregnancy Discrimination Act of 1978, Pub. L. No. 95-995, 92 Stat. 2076.

– F. Supp. 3d –, 2015 WL 8916764, at *5–6 (C.D. Cal. Dec. 15, 2015); *Isaacs*, 2015 WL 6560655, at *3–4.

There appear to be two theories relied on by courts that have found sexual orientation discrimination claims to be cognizable as sex discrimination claims under Title VII. The first theory, which has been articulated by the Equal Employment Opportunity Commission ("EEOC") in numerous administrative proceedings, is that sexual orientation discrimination is *necessarily* sex discrimination.[5] *See Baldwin v. Foxx*, Appeal No. 0120133080, 2015 WL 4397641, at *5 (EEOC July 15, 2015).[6] According to this theory,

---

[5] This will be referred to as the "analytic argument." *See* Andrew Koppelman, *Why Discrimination Against Lesbians and Gay Men is Sex Discrimination*, 69 N.Y.U. L. Rev. 197, 208 (1994).

[6] While the EEOC's interpretation of Title VII is not binding on this Court, it's entitled to respect to the extent that it's persuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Hinton*, 2016 WL 2621967, at *4 ("The district courts that have decided Title VII claims in the wake of *Foxx* have also given the EEOC's interpretation of Title VII [*Skidmore*] deference. . . ."). Nearly every court that has found sexual orientation discrimination claims to be cognizable under Title VII in the last year has cited the EEOC's decision in *Foxx*. *See Isaacs*, 2015 WL 6560655, at *3; *Videckis*, 2015 WL 8916764, at *8; *Roberts*, 115 F. Supp. 3d at 363. The courts that have held that sexual orientation discrimination claims are not cognizable following *Foxx* have done so largely due to binding circuit precedent to the contrary. *See, e.g., Christiansen v. Omnicom Grp., Inc.*, – F. Supp. 3d –, 2016 WL 951581, at *14 (S.D.N.Y. Mar. 9, 2016) (noting the "futility of treating sexual orientation discrimination as separate from sex-based considerations," but concluding that the court was bound by precedent to do so); *Hinton*, 2016 WL 2621967, at *3–5 (concluding that the court was bound by *Wrightston v. Pizza Hut of America, Inc.*, 99 F.3d 138 (4th Cir. 1996)). A few courts have ignored or rejected *Foxx*. *See Burrows v. Coll. of Cent. Fla.*, No. 5:14cv197, 2015 WL 5257135, at *2 (M.D. Fla. Sept. 9, 2015) (stating simply that "the Court declines to reconsider in light of the EEOC's

"'[s]exual orientation' as a concept cannot be defined or understood without reference to sex." *Id.* To illustrate this, the EEOC provided a hypothetical involving a male and female employee, each of whom keeps a picture of their female spouse on their desk. *Id.* If the female employee were to be suspended for displaying the photo, and the male employee was not suspended, the female employee could accurately state that she suffered an adverse action that would not have occurred but for her sex. *Id.*[7]

The analytic argument has a great deal of surface appeal. In the hypothetical laid out in *Foxx*, it does seem that the fired employee has suffered disparate treatment on account of her sex. But this is only true in the most technical sense; no animus against women or based on stereotypes about women is really behind the discriminatory treatment. *See Latta v. Otter*, 771 F.3d 456, 495–96 (9th Cir. 2014) (Berzon, J., concurring) ("Employment discrimina-

---

decision"); *Evans v. Ga. Reg'l Hosp.*, 2015 WL 5316694 (S.D. Ga. 2015) (not addressing EEOC's decision).

[7] As the EEOC also pointed out in *Foxx*, this logic extends to discrimination against employees on account of being straight: "Assume a woman is suspended because she has placed a picture of her husband on her desk but her gay colleague is not suspended after he places a picture of his husband on his desk. The straight female employee could bring a cognizable Title VII claim of disparate treatment because of sex." *Foxx*, 2015 WL 4397641, at *5.

tion . . . on the basis of sexual orientation . . . [is] primarily moti-vated by stereotypes about sexual orientation; by animus against people based on their nonconforming sexual orientation; and by distaste for same-sex sexual activity or the perceived personal characteristics of individuals who engage in such behavior. . . . And th[e]se sorts of restrictions do not turn directly on gender; they do not withhold a benefit, choice, or opportunity from an individual because that individual is a man a woman.").

Indeed, the flaw in the analytic argument becomes evident when one considers a hypothetical that slightly tweaks the *Foxx* hypothetical. Imagine now that the female employee is bisexual. She is married to a man, and her co-worker—who we will assume is heterosexual—is married to a woman. Each keeps a picture of their spouse on their desk. The female employee is suspended not for displaying a photo of her spouse, but rather for *being* bisexual. Unlike the *Foxx* hypothetical, this hypothetical does not allow for a tidy resolution by switching the parties' genders. The true nature of sexual orientation discrimination—namely, that it is discrimi-nation based on animus towards certain sexual orientations, not any particular sex or gender—is laid bare.

Despite the EEOC's decision in *Foxx*, this Court does not find the analytic argument convincing. It seems to fail to provide a theoretical basis for protecting bisexuals from discrimination, and it fails to tie the proscription on discrimination to animus based on an employee's gender or failure to conform to gender stereotypes. However, there is a second theory that is more convincing.

**3**

The second theory is that sexual orientation discrimination is a cognizable form of sex discrimination because it falls under the category of gender stereotype discrimination. *See Foxx*, 2015 WL 4397641, at *7 ("In fact, stereotypes about homosexuality are directly related to our stereotypes about the proper roles of men and women.") (quoting *Centola v. Potter*, 183 F. Supp. 2d 403, 410 (D. Mass. 2002)). Gender stereotype discrimination is, of course, a cognizable form of sex discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (plurality opinion) ("We are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group."). Indeed, courts have long understood both Title VII and anti-discrimination laws in general to be aimed at least in part at preventing and curing the problem of decisions (employment and

22

otherwise) based on stereotypes. *See, e.g.*, *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 (1978) ("It is now well recognized that employment decisions cannot be predicated on mere 'stereotyped' impressions about the characteristics of males or females."); *see also Weinberger v. Wiesenfeld*, 420 U.S. 636, 643 (1975) ("A virtually identical 'archaic and overbroad' generalization . . . 'not . . . tolerated under the Constitution' underlies the distinction drawn [in this case], namely, that male workers' earnings are vital to the support of their families, while the earnings of female wage earners do not significantly contribute to their families' support.") (internal citations omitted).

The gender stereotype discrimination theory was endorsed by the Eleventh Circuit in the context of discrimination against transgender people in *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011).[8] The court in *Brumby* reasoned that "'[t]he very acts that

---

[8] *Brumby* involved the question of "whether discriminating against someone on the basis of his or her gender non-conformity constitutes sex-based discrimination *under the Equal Protection Clause*," not Title VII. 663 F.3d at 1316 (emphasis added). But *Brumby* cited and relied on many Title VII cases, and as a general matter the analysis of what types of discrimination constitute "sex discrimination" is the same for claims brought under Title VII and the Equal Protection Clause. *See Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1331–32 (11th Cir. 2003) (Barkett, J., concurring in part and dissenting in part) ("[T]here is no difference between the scope of Title VII and the scope of the Equal Protection Clause concerning intentional discrimination in the form of disparate treatment in the public workplace . . . .").

define transgender people as transgender are those that contradict stereotypes of gender-appropriate appearance and behavior." *Id.* at 1316 (quoting Ilona M. Turner, *Sex Stereotyping Per Se: Transgender Employees and Title VII*, 95 Cal. L. Rev. 561, 563 (2007)). Given the long line of cases holding that "discrimination against plaintiffs because they fail to act according to socially pre-scribed gender roles" is sex discrimination, the court held that "a government agent violates the Equal Protection Clause's prohibi-tion of sex-based discrimination when he or she fires a transgender or transsexual employee because of his or her gender non-conform-ity." *Id.* at 1317–20. The *Brumby* court's reasoning and holding certainly seem to support the "gender stereotype" theory of sexual orientation discrimination.

However, this theory faces opposition from some courts. Claims of gender stereotyping have been limited to situations where the plaintiff's divergence from a given gender stereotype is readily apparent in the workplace. *See, e.g.*, *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763 (6th Cir. 2006) ("Later cases applying *Price Waterhouse* have interpreted it as applying where gender non-conformance is demonstrable through the plaintiff's appear-ance or behavior."). In the same vein, courts have been wary of

perceived attempts to "bootstrap" claims for sexual orientation discrimination using a gender stereotype discrimination theory. *See, e.g.*, *Simonton v. Runyon*, 232 F.3d 33, 38 (2d Cir. 2000). The reason for said opposition, at least as articulated in *Simonton*, is that "not all homosexual men are stereotypically feminine, and not all heterosexual men are stereotypically masculine." *Id*.

These arguments seem to this Court to misapprehend the nature of animus towards people based on their sexual orientation, actual or perceived. Such animus, whatever its origin, is at its core based on disapproval of certain behaviors (real or assumed) and tendencies towards behaviors, and those behaviors are disapproved of precisely because they are deemed to be "inappropriate" for members of a certain sex or gender. "[G]ay people, simply by identifying themselves as gay, are violating the ultimate gender stereotype—heterosexual attraction. Since there is a presumption and prescription that erotic interests are exclusively directed to the opposite sex, those who are attracted to members of the same sex contradict traditional notions about appropriate behavior for men and women." Anthony E. Varona & Jeffrey M. Monks, *En/Gendering Equality: Seeking Relief Under Title VII Against Employment Discrimination Based on Sexual Orientation*, 7 Wm.

& Mary J. Women & L. 67, 84 (2000) (internal citations and quotations omitted). "Just as the impermissible discrimination in [*Price Waterhouse*] was directed at the plaintiff for being a woman who transgressed gender norms by acting masculinely, a gay woman who is discriminated against for being a woman who acts masculinely *by having the traditionally male trait of being attracted to women* is being discriminated against on the basis of a sex stereotype." Cody Perkins, Comment, *Sex & Sexual Orientation: Title VII After* Macy v. Holder, 65 Admin. L. Rev. 427, 442 (2013) (emphasis added). Whether the person treated differently is otherwise—that is to say, his or her sexuality aside—in conformance with gender stereotypes does not render the disparate treatment lawful. When a "traditionally masculine" gay man is fired because he is gay, that firing is no less because of sex than when an "effeminate" gay man is fired.

This view—that discrimination on the basis of sexual orientation is necessarily discrimination based on gender or sex stereotypes, and is therefore sex discrimination—is persuasive to this Court, as it has been to numerous other courts and the EEOC. *See Foxx*, 2015 WL 4397641, at *7–8 ("Sexual orientation discrimina-

tion also is sex discrimination because it necessarily involves discrimination based on gender stereotypes."); *see also Videckis*, 2015 WL 8916764, at *7 ("Stereotypes about lesbianism, and sexuality in general, stem from a person's views about the proper roles of men and women—and the relationships between them."). It also follows naturally from (though it is not compelled by) *Brumby*, which is binding Eleventh Circuit precedent. Simply put, to treat someone differently based on her attraction to women[9] is necessarily to treat that person differently because of her failure to conform to gender or sex stereotypes, which is, in turn, necessarily discrimination on the basis of sex.[10]

## IV

No one doubts that discrimination against people based on their sexual orientation was not "the principal evil Congress was

---

[9] Note that the second theory provides a theoretical basis for protecting bisexual employees. If a woman identifies as bisexual and is attracted to both women and men, then her attraction to women violates a gender stereotype and renders discrimination against her to be discrimination based on sex.

[10] This Court acknowledges that numerous Circuit Courts of Appeals have held that discrimination on the basis of sexual orientation is *not* necessarily discrimination based on gender or sex stereotyping. *See* Ryan H. Nelson, *Sexual Orientation Discrimination Under Title VII After* Baldwin v. Foxx, 72 Wash. & Lee L. Rev. Online 255, 272 n.71 (2015) (collecting cases). However, all of these cases predate the EEOC's decision in *Baldwin*, and none of them (save *Smith v. Liberty Mutual Insurance Co.*, discussed *supra*) are binding on this Court. In light of *Baldwin* and *Brumby*, this Court is confident that it has reached the correct answer notwithstanding these prior appellate decisions.

concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998) (holding that Title VII extended to "male-on-male sexual harassment in the workplace"). To hold that Title VII's prohibition on discrimination "because of sex" includes a prohibition on discrimination based on an employee's homosexuality or bisexuality or heterosexuality does not require judicial activism or tortured statutory construction. It requires close attention to the text of Title VII, common sense, and an understanding that "[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Manhart*, 435 U.S. at 707 n.13 (quoting *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1198 (7th Cir. 1971)).

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Partial Dismissal, ECF No. 15, is **DENIED**.

2. Defendant must answer the Amended Complaint within **14 days** of the entry of this Order.

**SO ORDERED on June 20, 2016.**

**s/Mark E. Walker                          **
**United States District Judge**